UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **ARI AKRAYI**, <br><br> Plaintiff, <br><br> v. <br><br> **UNITED STATES DEPARTMENT OF STATE** *et. al.*, <br><br> Defendants. | Case No. 22-cv-1289 (CRC) |

### MEMORANDUM OPINION

Plaintiff Ari Akrayi, a United States citizen, has been waiting nearly three years for the government to adjudicate his Iraqi wife's U.S. visa application. Claiming unreasonable delay under the Administrative Procedure Act ("APA"), he filed this suit to compel the State Department to do so. Akrayi also challenges an internal Department of Homeland Security ("DHS") initiative—the Controlled Application Review and Resolution Program ("CARRP")—that applies heightened screening to visa applications with potential national security concerns. Because Akrayi has not met his burden to plausibly allege an unreasonable delay, a violation of his due process rights, or a concrete injury due to CARRP, the Court will grant the government's motion to dismiss the complaint.

I.  **Background**

Mr. Akrayi filed an I-130 visa petition in April 2019 to obtain lawful permanent resident status for his wife, Zhala Ibrahim Jameel, an Iraqi citizen. Compl. ¶¶ 2, 11, 13–15. Almost a year later, in March 2020, the United States Citizenship and Immigration Services ("USCIS") approved the petition. Id. ¶ 15. Akrayi's petition was then processed by the National Visa Center ("NVC"), which forwarded the case to the U.S. Embassy in Abu Dhabi. Id. ¶ 16. Jameel

has yet to be interviewed by the Embassy. See id. ¶¶ 17–18. Akrayi has repeatedly attempted to obtain a decision from USCIS, including contacting the NVC numerous times. Id. ¶ 19. But to no avail. Id.

Akrayi further alleges "[o]n information and belief" that the government is intentionally delaying a response to Jameel's visa application through CARRP. Compl. ¶¶ 25–30. The complaint describes CARRP as an internal DHS policy that flags visa applications that present potential national security concerns and directs field officers to deny the applications or at least delay their adjudication. Id. ¶¶ 25, 28. But by casting too wide a net, Akrayi claims, the CARRP policy errs by labeling "innocent, law-abiding" residents, like Jameel, as "national security concerns." Id. ¶ 29. Akrayi also asserts that CARRP targets applications from predominantly Muslim countries. See id. ¶¶ 26, 30.

In May 2022, Akrayi brought suit against several government officials and agencies under the APA's unreasonable delay provision, 5 U.S.C. § 706(1), and the Mandamus Act, 28 U.S.C. § 1361. He requests an order directing the government to process Jameel's visa application within sixty days and issue her an immigrant visa, and seeks declaratory and injunctive relief as to CARRP. The government moved to dismiss the complaint for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6).

## II. Legal Standards

To survive a Rule 12(b)(6) motion, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ramirez v. Blinken, 594 F. Supp. 3d 76, 85 (D.D.C. 2022) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)). At this stage, courts must "accept all the well-pleaded factual allegations of the complaint as true and draw all reasonable inferences from those allegations in the plaintiff's favor." Banneker

Ventures, LLC v. Graham, 798 F.3d 1119, 1129 (D.C. Cir. 2015). But a court need not accept a plaintiff's legal conclusions. Browning v. Clinton, 292 F.3d 235, 242 (D.C. Cir. 2002). "In determining whether a complaint fails to state a claim, [a court] may consider only the facts alleged in the complaint, any documents either attached to or incorporated in the complaint and matters of which [the court] may take judicial notice." EEOC v. St. Francis Xavier Parochial Sch., 117 F.3d 621, 624 (D.C. Cir. 1997).

**III. Analysis**

The government contends first that all of Akrayi's claims are barred by the doctrine of consular non-reviewability. After rejecting this contention, the Court will turn to each claim: (1) unreasonable delay under the APA and Mandamus Act, (2) violation of due process, and (3) the challenge to CARRP.

A. Consular Non-Reviewability

The doctrine of consular non-reviewability "shields a consular official's decision to issue or withhold a visa from judicial review, at least unless Congress says otherwise." Baan Rao Thai Rest. v. Pompeo, 985 F.3d 1020, 1024 (D.C. Cir. 2021) (quoting Saavedra Bruno v. Albright, 197 F.3d 1153, 1159 (D.C. Cir. 1999)). As recently clarified by the D.C. Circuit, dismissal pursuant to the consular non-reviewability doctrine "is a merits disposition under [Rule] 12(b)(6)." Id. at 1027. While the doctrine "clearly applies to final visa determinations," it "does not apply to challenges regarding decisions that are not yet final." Joorabi v. Pompeo, 464 F. Supp. 3d 93, 100 (D.D.C. 2020).

This Court has consistently held that the doctrine of consular non-reviewability does not bar claims that the "Government has unreasonably delayed rendering a decision." Didban v. Pompeo, 435 F. Supp. 3d 168, 174 (D.D.C. 2020) (Cooper, J.) (holding that consular non-

3

reviewability does not bar review of the government's failure to decide an application); see also Giliana v. Blinken, 596 F. Supp. 3d 13, 18 (D.D.C. 2022) (Cooper, J.) ("[C]laims alleging unreasonable delay . . . are not barred by the doctrine of consular nonreviewability." (cleaned up)). This case is no different. Akrayi challenges USCIS's delay in rendering a decision, and "not an actual final decision made by a consular officer." Id. at 19.

The government nonetheless contends that the D.C. Circuit's decision in Baan Rao Thai Rest. v. Pompeo bars review here. 985 F.3d at 1024. Not so. Baan Rao held that the doctrine of consular non-reviewability prevents judicial review of a consular office's decision to "issue or withhold" a visa. Id. at 1024–25. Challenging a *delay* in processing a visa is distinguishable from challenging a decision to "*withhold* a visa." While Baan Rao bars review of the latter, it is silent as to the former. See Al-Gharawy v. U.S. Dep't of Homeland Sec., No. 21-1521, 2022 WL 2966333, at *8 (D.D.C. July 27, 2022) (noting that the word "withhold" can imply an active or passive state of affairs, but that Baan Rao concerned an active visa denial rather than a "temporary or passive refusal"); Sawahreh v. U.S. Dep't of State, No. 22-1456, 2022 WL 4365746, at *3–4 (D.D.C. Sept. 21, 2022) (rejecting argument that Baan Rao's use of the word "withheld" barred review of cases claiming unreasonable delay of visa adjudication). As "nothing in Baan Rao even hints that it upends" caselaw holding that consular non-reviewability does not apply to unreasonable delay cases, review of Akrayi's claim is not barred. See Giliana, 596 F. Supp. 3d at 19.

B. Unreasonable Delay

The Court now turns to Akrayi's contention that the government has unreasonably delayed the processing of Jameel's visa, in violation of the APA and Mandamus Act. See Compl. ¶¶ 7, 22, 32. The APA grants courts the authority to "compel agency action unlawfully

withheld or unreasonably delayed," 5 U.S.C. § 706(1), when an agency does not resolve a matter presented to it "within a reasonable time."  5 U.S.C. § 555(b); see also Mashpee Wampanoag Tribal Council, Inc. v. Norton, 336 F.3d 1094, 1099 (D.C. Cir. 2003).  The standards for reviewing agency inaction—including visa processing delays—are the same under the APA and Mandamus Act.  Skalka v. Kelly, 246 F. Supp. 3d 147, 152 (D.D.C. 2017).  The Court will thus resolve the unreasonable delay claims together.

To assess whether agency delay is reasonable, courts in this circuit employ the six-factor test outlined in Telecommunications Research & Action Center v. FCC (''TRAC"), 750 F.2d 70 (D.C. Cir. 1984).  Although the TRAC framework is a "fact intensive inquiry[,]" it still proves useful at the motion to dismiss stage.  Liu v. Mayorkas, No. 20-cv-654, 2021 WL 2115209, at *3 (D.D.C. May 25, 2021).  On a 12(b)(6) motion, courts apply the TRAC factors not to "determine[e] whether there has been an unreasonable delay," but instead to evaluate whether a plaintiff's complaint alleges "facts sufficient to state a plausible claim for unreasonable administrative delay."  Id. (cleaned up).  The TRAC factors are as follows:

> (1) the time agencies take to make decisions must be governed by a "rule of reason;"
>
> (2) where Congress has provided a timetable or other indication of the speed with which it expects the agency to proceed in the enabling statute, that statutory scheme may supply content for this rule of reason;
>
> (3) delays that might be reasonable in the sphere of economic regulation are less tolerable when human health and welfare are at stake;
>
> (4) the court should consider the effect of expediting delayed action on agency activities of a higher or competing priority;
>
> (5) the court should also take into account the nature and extent of the interests prejudiced by delay; and
>
> (6) the court need not "find any impropriety lurking behind agency lassitude in order to hold that agency action is 'unreasonably delayed.'"

In re United Mine Workers of Am. Int'l Union, 190 F.3d 545, 549 (D.C. Cir. 1999) (quoting TRAC, 750 F.2d at 80) (cleaned up).

Whether an agency's delay is unreasonable depends on "the complexity of the task at hand, the significance (and permanence) of the outcome, and the resources available to the agency" and "cannot be decided in the abstract, by reference to some number of months or years." Didban, 435 F. Supp. 3d at 176 (quoting Mashpee Wampanoag Tribal Council, 336 F.3d at 1102). Thus, in balancing the TRAC factors, courts consider "the importance of competing priorities in assessing the reasonableness of an administrative delay." Mashpee Wampanoag Tribal Council, 366 F.3d at 1100 (cleaned up). Applying the TRAC factors here, the Court finds that Akrayi has not stated a plausible claim.

　　　　1. *TRAC Factors One and Two*

The Court begins with factors one and two: "(1) whether the response time is governed by a rule of reason, as informed by (2) any congressional timetable." Giliana, 596 F. Supp. 3d at 20. While courts often consider these two factors jointly, see Milligan v. Pompeo, 502 F. Supp. 3d 302, 317–18 (D.D.C. 2020), the first has been labeled the most important. In re Core Commc'ns, Inc., 531 F.3d 849, 855 (D.C. Cir. 2008). Both factors help courts evaluate "whether the agency's response time complies with an existing specified schedule and whether it is governed by an identifiable rationale." Ctr. for Sci. in the Pub. Int. v. FDA, 74 F. Supp. 3d 295, 300 (D.D.C. 2014). Here, these factors favor the government.

The delay in processing, almost three years, does not reach the length that courts have found unreasonable. While courts have "generally found that immigration delays in excess of five, six, seven years are unreasonable, [] those between three to five years are often not[.]" Didban, 435 F. Supp. 3d at 176 (cleaned up) (two-year delay not unreasonable); see also

Ghadami v. U.S. Dep't of Homeland Sec., No. 19-cv-00397, 2020 WL 1308376, at *8 (D.D.C. Mar. 19, 2020) (25-month delay for I-130 visa not unreasonable); Arab v. Blinken, 600 F. Supp. 3d 59, 70 (D.D.C. 2022) (same for 30-month I-130 visa delay); Zaman v. U.S. Dep't of Homeland Sec., No. 19-cv-3592, 2021 WL 5356284, at *6 (D.D.C. Nov. 16, 2021) (same for 42-month delay). Jameel's application has been delayed for almost three years, and thus falls comfortably within the range of reasonableness.

Whether a rule of reason exists is also especially informed by "the resources available to the agency." Mashpee Wampanoag Tribal Council, 336 F.3d at 1102. This Court has joined others in this district in recognizing the impact of the COVID-19 pandemic on the State Department's resources for visa processing. See, e.g., Giliana, 596 F. Supp. 3d at 20–21 (recognizing that visa services resources "have been strapped" due to the COVID-19 pandemic); Dastagir v. Blinken, 557 F. Supp. 3d 160, 165–66 (D.D.C. 2021) (analyzing the "highly relevant" impact of COVID-19 on visa processing delays); Khan v. Blinken, No. CV 21-1683 (JEB), 2021 WL 5356267, at *3 (D.D.C. Nov. 17, 2021) (recognizing the "logistical challenges that COVID-19 has imposed"). The impact of COVID-19 on State Department operations thus informs the rule of reason analysis for agency inaction.

In March 2020, "the State Department suspended visa services in all U.S. embassies and consulates around the world in response to the COVID-19 pandemic." Dastagir, 557 F. Supp. 3d at 163. Four months later, in July 2020, the U.S Embassies and consulates entered a "'phased resumption of visa services' . . . as 'local conditions and resources allow[ed].'" Id. (quoting Suspension of Routine Visa Servs., U.S. Dep't of State, Bureau of Consular Affs. (July 22, 2020), https://travel.state.gov/content/travel/en/us-visas/visa-information-resources/visas-news-archive/suspension-of-routine-visa-

services.html?msclkid=cbbb240caf7d11ec99ce2657fe0fe870).  Yet, the "pandemic continues to severely impact the number of visas . . . embassies and consulates abroad are able to process." National Visa Center (NVC) Immigrant Visa Backlog Report, U.S. Dep't of State, Bureau of Consular Affs., https://travel.state.gov/content/travel/en/us-visas/visa-information-resources/visas-backlog.html (last visited Mar. 3, 2023).  There are currently 444,828 applicants, like Jameel, who are awaiting interviews as of January 31, 2023.  Id. (current as of Mar. 1, 2023).  Therefore, the delay in visa processing worldwide, including in Abu Dhabi, is an additional factor in considering the delay here.

Akrayi responds by citing a trio of out-of-circuit cases, decided pre-COVID, holding two-year delays as unreasonable for the FBI's processing of I-485 applications for adjustment to lawful permanent resident status.  See Pl.'s Opp'n at 11 (citing Gelfer v. Chertoff, No. C06-06724, 2007 WL 902382, at *2 (N.D. Cal. Mar. 22, 2007); Konchitsky v. Chertoff, No. C07-00294, 2007 WL 2070325, at *6 (N.D. Cal. July 13, 2007); and Huang v. Chertoff, No. C07-0277, 2007 WL 1831105, at *2 (N.D. Cal. June 25, 2007)).  But given the backlog of cases due to COVID-19 and the reduced pace of visa processing, a nearly three-year delay for an I-130 visa application is not unreasonable.  See Tate v. Pompeo, 513 F. Supp. 3d 132, 151 (D.D.C. 2021) (finding that the government's determination of "how to allocate scarce resources in a global pandemic" outweighs visa applicants' "interests in immediate adjudication of their visas").  The Court thus finds that the first two TRAC factors support the government.

2. *TRAC Factor Four*

The fourth factor also favors the government.  A "judicial order putting" Jameel's application at the front of the line would necessarily "move[] all others back one space and produce[] no net gain."  Giliana, 596 F. Supp. 3d at 22 (citing In re Barr Labs., Inc., 930 F.2d 72,

8

75 (D.C. Cir. 1991)).  Akrayi does not allege that the government is treating Jameel's application differently from those with similar visa applications before the U.S. Embassy in Abu Dhabi.  See Bagherian v. Pompeo, 442 F. Supp. 3d 87, 94–96 (D.D.C. 2020).  Instead, Akrayi points to cases in other circuits to buttress his claim that the costs of resource constraints should not fall on plaintiffs.  See Pl. Opp'n at 11–12.  While the Court does not wish to minimize the harm felt by Akrayi and Jameel from being separated, precedent in this circuit recognizes that expediting review here would merely redirect resources from other cases.  See Skalka, 246 F. Supp. 3d at 153–154 ("The Court would be outside its limited role . . . if it required the agencies to invest the high degree of resources . . . necessary to accurately investigate plaintiffs' visa petitions . . . while others would suffer in response."); Arab, 600 F. Supp. 3d at 71 (collecting cases stating that "deference must be given to the State Department's priority-setting and resource-allocation decisions").  Delays due to resource constraints do not warrant a "judicial reordering[] of agency priorities."  Giliana, 596 F. Supp. 3d at 22 (quoting Bagherian, 442 F. Supp. 3d at 96).

### 3. *TRAC* Factors Three and Five

On the other hand, the third and fifth factors favor Akrayi and Jameel.  For the third factor, courts assess whether "human health and welfare are at stake," and for the fifth, they evaluate the "nature and extent of the interests prejudiced by delay."  Schwartz v. U.S. Dep't of Homeland Sec., No. 21-378, 2021 WL 4133618, at *4 (D.D.C. Sept. 10, 2021) (quoting TRAC, 750 F.2d at 80).  Here, Akrayi alleges that the delay in processing Jameel's visa has "irrevocably harmed [them] by causing a loss of consortium between [them], among other ways."  Compl. ¶ 38.  The Court appreciates the harm that has befallen Akrayi and Jameel from the delay in enjoyment of their married life.  The Court thus joins several courts in this district in finding that

factors three and five weigh in favor of plaintiffs. See, e.g., Varghese v. Blinken, No. 21-CV-2597 (CRC), 2022 WL 3016741, at *7 (D.D.C. July 29, 2022) (weighing seriously the harm caused by a married couple's separation); Didban, 435 F. Supp. 3d at 177 (same).

### 4. TRAC Factor Six

The sixth TRAC factor considers agency impropriety. Akrayi contends that his allegations about DHS's CARRP policy suggest bad faith on the part of the government. Pl. Opp'n at 12–14. But as discussed below, Akrayi's CARRP claim fails. This factor thus favors the government.

\* \* \*

On balance, the Court concludes that the TRAC factors favor the government and that Akrayi has failed to state a plausible claim of unreasonable delay. The Court recognizes that the delay is substantial and imposes hardship on Akrayi and Jameel, and it encourages the government to act on the application promptly. But given the impact of COVID-19 on agency resources, the Court lacks a basis to put Jameel's application at the front of the line.

### C. Challenge to CARRP

Akrayi has also failed to establish standing to challenge CARRP, the DHS "internal policy" used to "investigate and adjudicate applications deemed to present potential 'national security concerns.'" See Compl. ¶ 28.[1] A plaintiff bears the burden of establishing the three elements of standing: (1) an "injury in fact;" (2) that is fairly traceable "to the challenged

---

[1] While the government does not move to dismiss Akrayi's CARRP claim under Rule 12(b)(1), a court has an "affirmative obligation to ensure that it is acting within the scope of its jurisdictional authority." Grand Lodge of Fraternal Order of Police v. Ashcroft, 185 F. Supp. 2d 9, 13 (D.D.C. 2001). Article III standing is a threshold question of jurisdiction. Grocery Mfrs. Ass'n v. EPA, 693 F.3d 169, 174 (D.C. Cir. 2012).

action," and (3) can be likely "redressed by a favorable decision."  See Lujan v. Defenders of Wildlife, 504 U.S. 555, 560–61 (1992) (cleaned up).

While plaintiffs challenging CARRP need not have "concrete proof that they were subjected to the program to survive a motion to dismiss" for lack of standing, they must raise a plausible inference they are being injured by CARRP.  Giliana, 596 F. Supp. 3d at 23–24.  Akrayi recites legal conclusions but does not allege sufficient facts concerning CARRP's application to Jameel.  He alleges that CARRP "intentionally delays the applications of applicants such as . . . Jameel due to security concerns" based on "characteristics such as national origin."  Compl. ¶¶ 25, 29.  He further contends that Jameel is "from a predominantly Muslim country" and that, "[o]n information and belief" the government is "intentionally delaying a response" due to CARRP.  Id. ¶ 26.  He adds that the State Department and DHS purportedly collaborate regularly when carrying out background and security investigations delayed by administrative processing.  Id. ¶ 24.

But "mere speculation" is insufficient to allege concrete injury from CARRP.  See Giliana, 596 F. Supp. 3d at 23 (dismissing CARRP challenge for lack of standing); Nusrat v. Blinken, No. 21-2801, 2022 WL 4103860, at *2–3 (D.D.C. Sept. 8, 2022) (same); Ahmed v. U.S. Dep't of Homeland Sec., No. 21-cv-893, 2022 WL 424967, at *4 (D.D.C. Feb. 11, 2022) (same).  Akrayi does not offer any factual allegation raising a plausible inference that CARRP is being applied to Jameel—the mere presence of a delay is not enough.

On this score, the Court takes judicial notice that CARRP is not used in the Form I-130 context.  See Ghadami, 2020 WL 1308376, at *6 n.3 ("A publicly available document released from USCIS as a result of FOIA requests states that CARRP does not apply to I-130 visa applications." (quoting Fraud Detection & National Security Controlled Application Review and

11

Resolution Program (CARRP) Independent Study, U.S. Citizenship and Immigration Services (Dec. 28, 2011), at 28, https://www.aclusocal.org/sites/default/files/wp-content/uploads/2013/01/FDNS-CARRP-Independent-Study-Powerpoint-v.-1.1-Dec.-28-2011.pdf)).  CARRP's lack of application to spousal visa applications only confirms that Akrayi has not alleged any concrete injury from the program.  He therefore lacks standing and defendants are entitled to dismissal on this claim.

### D. Due Process Claims

Last, the Court addresses Akrayi's due process claims.  Akrayi contends that the delay in processing his wife's Form I-130 visa violates his right "to fundamental fairness in administrative adjudication" under the Fifth Amendment and has caused a "loss of consortium."  Compl. ¶¶ 36, 38.  Akrayi fails to state a claim under either a procedural or substantive due process analysis.

To succeed on a substantive due process claim, a plaintiff must show "egregious official conduct" that is "arbitrary in the constitutional sense."  Thomas v. District of Columbia, No. 21-CV-00584 (CRC), 2022 WL 2817855, at *3 (D.D.C. July 19, 2022).  And to succeed on a procedural due process claim, a plaintiff must show that an official deprived him "of a liberty or property interest without providing appropriate procedural protections."  Atherton v. D.C. Office of the Mayor, 567 F.3d 672, 689 (D.C. Cir. 2009).  Under either theory, a plaintiff must allege she "has been deprived of a fundamental right or liberty or property interest."  Meyou v. U.S. Dep't of State, No. 21-2806, 2022 WL 1556344, at *5 (D.D.C. May 17, 2022) (cleaned up).

There is generally "no property right in an immigrant visa," nor do noncitizens "have a constitutionally-protected interest in the procedures by which such visas are obtained."  Smirnov v. Clinton, 806 F. Supp. 2d 1, 12 (D.D.C. 2011).  Yet, Akrayi posits that he has a protected

liberty interest in his spouse's visa.  See Pl. Opp'n at 15–16.  While new fundamental rights must ordinarily be tied to historical practice, Akrayi contends that "the Court has recognized [an exception] . . . for fundamental rights involving 'marriage and intimacy.'"  Id.  Circuit law forecloses this argument.  In Swartz v. Rogers, the D.C. Circuit held that a U.S. citizen has "no constitutional right which is violated" by the deportation of their spouse.  254 F.2d 338, 339 (D.C. Cir. 1958).  Courts in this district have routinely applied Swartz in holding that a citizen's constitutional right is not "violated by the denial of a spouse's visa application."  Rohrbaugh v. Pompeo, 394 F. Supp. 3d 128, 133 (D.D.C. 2019) (Cooper, J.); see also Zandieh v. Pompeo, No. CV 20-919 (JEB), 2020 WL 4346915, at *7–8 (D.D.C. July 29, 2020) (holding that delay in waiver adjudication did not violate due process).

As Akrayi lacks a protected interest in Jameel's visa, he has not suffered a violation of his constitutional rights.  The government is thus entitled to dismissal on this claim, too.

### IV.   Conclusion

For these reasons, the Court will grant the government's motion to dismiss.  A separate Order accompanies this Memorandum Opinion.

_____
CHRISTOPHER R. COOPER
United States District Judge

Date: March 9, 2023